The next case on the calendar for argument this morning is Zhang Jingrong v. Chinese Anti-Cult World Alliance, No. 182626. The next case on the calendar for argument this morning is Zhang Jingrong v. Chinese Anti-Cult World Alliance, No. 182626. May it please the Court. Good morning. Good morning, Your Honors. I know that Your Honors have read the briefs, and I think my main job today is to answer any questions you have. I'm happy to present my main points and highlight my main points, but if Your Honors have any questions, my main concern is that. My first question is what conceivably is wrong with what Judge Weinstein did? Okay. Okay. So now you can give me your argument that you would have given if a question hadn't been asked. Okay. There are two main points on this appeal that Judge Weinstein felt was so close that for the first time in his time on the bench, he certified these issues for interlocutory appeal, because although he came out on one side, he did acknowledge. Well, close or not, they were really critical to the, and they were, you know, this is a separate fact situation, but he didn't want to go forward with a big trial if, in fact, it turned out that he was wrong. Now you're going to tell us why he was wrong. Yes. First, as to the constitutionality of Section 248, under the four factors that the Morrison, the Supreme Court decision Morrison laid out, the activity that is illegalized, that is criminalized in Section 248 exceeds Congress's power under the Commerce Clause. And I'll just go through the four factors. The first factor is whether the activity being regulated is economic activity. Now, this Court, the Second Circuit in U.S. v. Westland in 1998, before Morrison, and in addressing the section of the statute dealing with access to abortion clinics, harassment, and threats at abortion clinics, this Court acknowledged correctly that the activity being regulated is not economic. Remarkably, the plaintiffs below, to Judge Weinstein, acknowledged Westland and acknowledged that that factor went against them. Why can't this be viewed as a statute that is designed to regulate worship in a religious context? And it doesn't just apply to these people. It applies to everybody. And that religion is, in effect, an activity generally, the worshiping and the activities of religion substantially affect interstate commerce, just as Judge Weinstein determined. Well, under that logic, violence against women, battering women, sending women to hospitals, guns outside of schools, where the dissent in Lopez pointed out all of the economic effects of violence outside of schools and guns outside of schools, that very logic simply is inconsistent with the Supreme Court's teaching in Lopez and Morrison. In Lopez and Morrison, the framework that the Supreme Court established is that we're not talking about post-New Deal that anything goes. That's just the fact. The fact is that the Supreme Court of the United States, and this Court is duty-bound to follow those decisions, has said there is a limit. And the way that the Supreme Court instructed that we are to look at this issue is first to consider whether the activity being regulated is economic. It is not. This Court in U.S. v. Westland held it is not. The plaintiffs acknowledged that below but didn't cite that case in their brief. It was simply missing because they know that on that factor it goes against them. This is not economic activity which is being regulated. The activity being regulated is harassment, threats, intimidation, no different than the type of activity being regulated in Morrison with violence against women. And the second factor is whether the statute contains a jurisdictional element. It does not. Now, this Court is faced with an optical problem, protect abortion clinics but not churches. But that's a false dichotomy because there's a statute, Section 247, which protects churches and property and has a jurisdictional element. The fact of the matter is this was sloppy congressional work, and that's not this Court's fault. This Court will not disturb the Federal Government's ability to protect religion or property of religion because Section 247, another statute, carefully has a jurisdictional element. Scalia. 247 deals with the actual destruction of property. Is that right? Fisher. That's right, but that's not the same as what we're dealing with here. Here we're dealing with worship, in a place of worship, which may or may not be a building. I mean, that's a separate issue. But so it's a little different. It's not focused on property. Well, that's right. And the fact of the matter is this the Congress could have put a provision in this statute that had a jurisdictional element, but it didn't. So the fact of the matter is that's a problem, because now any local any. It's a factor. It's a factor. It's not determinative. It's not. You're absolutely right, Your Honor. There are four factors. There are four factors. So the second factor goes against it. The third factor goes against it. There are no findings. This statute contains absolutely no findings whatsoever on the effect that harassment or intimidation at places of religious worship have. So it fails the third factor. And then on the fourth factor, the link between the activity being criminalized and the effect on interstate commerce. Now, the plaintiff's brief really reads almost exactly like the dissent and the decision in United States v. Lopez. In United States v. Lopez, the dissent goes on. Justice Breyer legitimately explains why guns and violence outside of schools have tremendous economic aggregate effects and that schools are economic engines and hubs of commerce and so on. And this ---- Your time is dwindling. Okay. So I'd like you to ask you to address your statutory interpretation question about places of religious worship, because if we find that the district court erred in his construction of the statute, I think we don't need to address the Commerce Clause question. Is that correct? Thank you, Your Honor. So if you'd take your remaining or some of your remaining time here to address that question, that would be helpful. I appreciate that, Your Honor. The district court made another error. Again, respectfully, Judge Weinstein enjoyed the briefing on both sides. He found the briefing to be excellent on both sides. So respectfully, the district court erred in his interpretation of place of religious worship. The plain text of place of religious worship, just looking at the plain text in both dictionaries and in case law and in zoning ordinances, does not suggest that it just means anywhere anyone on a street corner happens to be suggested. But here there was a ---- there were New York City permits, right, allowing the setup of these tables within restricted distances of the actual main location, I guess, of the Falun Gong practitioners. Isn't that correct? There were permits, but let me give you an example, Your Honor. The district court took away from the jury a fact question about whether this is legitimately a place of religious worship. And I'll give you an example. If a group of Catholics who belong to a church happen to get together and get a permit to put a table to protest abortion in the face of people walking by in the streets and they choose to inject that political discourse on the streets and get a permit, the getting of a permit, obtaining a permit does not transform that table to a place of religious worship. It's a jury question. The question for the jury is, there is a mountain of evidence in this case that these Falun Gong members got the table ---- But this was not a political activity. They were proselytizing, which is a religious activity. I may have to use time on my ---- Why don't you take a minute and answer the question, please? The fact of the matter is that's where the Court erred. There was much evidence in the case that the main purpose of the tables is to engage in political discourse. With the Falun Gong tables, what they do is they say that the Communist Party in China is evil, that if you're Chinese-American, you're presumably brainwashed by the Chinese Communist Party and you need to convert, which is why there's some tension. You're engaging in political discourse. We're not in fact using it. And I will point to pages that are ---- and we pointed in our briefs. The district court just took at face value the statement by some of the plaintiffs after I deposed the first ones and they admitted they weren't praying at the tables, there were 13 of them. Then plaintiff's counsel got the later ones to start saying they were praying. That's a fact question for the jury. I get to go to a jury and say, is this a place of religious worship or are these people heckling about Chinese ---- Communist China and that you need to convert from communism? You don't think the district court just made an erroneous legal determination in construing the statute? You think this was a fact question that had to go to the jury? Is that right? He made a ---- yet both. He made a legal error in taking away from the jury ruling that as a matter of law, this table had to be a place of religious worship. That's a legal error. You agree that you could have a place of religious worship outside of a building. You would agree with that? I ---- You would agree with the constitutional avoidance problem that he addressed? Yes. But that's consistent with our position, because if you have mountained the district judge said that you could have certain groups in mountain worship. If there's a mountain, if there's an area where indisputably, indisputably where the jury determines that that was a place of religious worship, they really were worshiping. They weren't heckling on the streets about the premier of China. If that ---- if I went over, if someone went over to that peaceful group that was a place of worship, that would be covered. But the judge took that away from me. Or if a religion said that a place of worship is wherever you kneel down and pray. If the religion, that was part of the doctrine of the religion, you couldn't challenge that. Well, but that's not these facts. And in fact, there is a question about whether if you inject yourself on the street to engage in political discourse, now that automatically is a place of religious worship, especially given the fact that Senator Kennedy was very worried about that, because he wanted to make it absolutely clear that you could not just set that up outside an abortion clinic and say, now I have a place of religious worship. He specifically had a dialogue. Scalia. We're not dueling legislative history here, because the conference report was broader. So can I reserve?  Thank you very much, Your Honor. You have three minutes to rebuttal. We'll hear from your adversaries. Ms. Marsh. Good morning, Your Honors. Terry Marsh. Good morning. Could I ask you to adjust the microphone? And you can also move the desktop down. There's a button to your right.       Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Yes. We need to make sure the microphone picks up your voice. Okay. Good. You can hear? If you speak loud enough. I'm told I'm soft-spoken, but I'll try. So good morning, Your Honors. Terry Marsh, on behalf of the appellees, plaintiffs. So you're here for the Human Rights Law Foundation, is that correct? Yes. Okay. Yes. This is a hotly contested case, and I'm not going to go through step-by-step all of the places of disagreement. I'm just focusing on the two issues. Yes, exactly. Exactly. So I'll be addressing the first issue in arguing that under the third prong of Lopez, that Fasche, and I'm pronouncing it Fasche. When I say Fasche, I'm talking about the. You talk towards the microphone rather than to the side. I'm sorry. When I say Fasche, I'm talking about the religious freedom provision. He's making the argument basically that Lopez, Morris, and cover. Why don't they? I'm sorry, what? Lopez and Morrison cover this. That's his argument. That. We're going to follow Lopez and Morrison. Yeah, so. This is outside of the Commerce Clause reach. So I'm not sure I just followed you. I'm wearing a new hearing aid, and it's kind of new to me. Are you saying you want me to distinguish Morrison and Lopez? Is that what you're asking me? I'm asking you why he's not right. Oh, okay, sure. So there's two ways, I think, to look at Fasche under Lopez and or Morrison. I'd like to first, if you don't mind, call your attention to two empirical findings that I think are relevant to how the case is decided. First, places, and this doesn't answer the bigger question yet. First, places of worship involve commerce. So 1%, they contribute 1% of the GPA to the GPA. There's 74. Sorry, when you're saying places of worship involve Congress, in what way are you using the term places of worship? Do you mean religions involve commerce? I'm talking about actual houses of worship, and then I can address informal places of worship. So in other words ‑‑ Give me an example of a house of worship. A house of worship would be a church. So I'm relying on the Pew Report, which is an empirical study done by the Pew Foundation, authored by Bernard Grimm. And in that report, he makes clear, he makes a number of points that houses of worship, meaning that would be covered buildings, contribute 1% to the GPA. Their annual revenue is about $74 billion. They contribute 50% of all charitable giving. They offer an array of commercial services to their constituents, bookstores, daycare, so on and so forth. When you say houses of worship, you mean organized religion. Well, so, yeah, I mean, I'm including in ‑‑ when I talk about places of worship, I'm including all religions that are not illegal. And I'm, of course, my co‑counsel will be defining this in more detail, but that the place that the religion designates for worship and that is used routinely for worship would be the place of worship. In Lopez, didn't the dissent emphasize that school zones had economic consequences? Right. Wasn't that the dissent in that case, not the majority? So I think ‑‑ was prohibited there, which was the violence, I mean, the sale of a gun. Right. In a school zone. Right. So I think that the possession of a school, the possession of a gun in a school zone, so taking it together is one phrase, is very, very speculative. In other words, when I say speculative, it's possible that somebody who has a gun would make that gun visible to somebody else. It's possible that somebody who has a gun would bring the gun into the school from the school zone. It's possible that somebody who has a gun might use it. And it's possible that he might use it and injure people, but it's also possible that he might not. So my understanding of Lopez is that there's just may, might, would, could in the statute, number one. And number two, that, as you said, that Scalia defines as ‑‑ he excludes from the definition of economic possession. But as you're saying, of course, the school itself is, you know, could be seen as economic, but the relationship between the possession of the gun and commerce is just very, very, very attenuated because of the may, might, would, could. Whereas here, you're talking about somebody who actually injures somebody at a religious place of worship. It requires injury. It requires threats of force or force that injure, injure the person. So I think that ‑‑ Move to Morrison, then. So, okay. Injury of women could be argued to affect their ability to function in interstate commerce as well. Well, so, yeah, so Morrison ‑‑  Because Morrison to me is even more abstract, quite frankly, because regardless of what I think about the Violence Against Women Act, that it's not tethered to any place. I mean, it could be any time. It could be any place. I mean, it might be the place of work. It might be while a woman's working. It might be, you know, while she's, I don't know, getting her hair done, whatever. It's not tethered to anything at all. Anywhere, any place, who knows? You know, I think if it had been narrowed, if it had been cabined in some way, it might have been upheld. So I think, and both Morrison and Lopez say that when they define economic activity, they're talking about, well, this is not in any way economic in any sense of the word is this economic, suggesting that, you know, Morrison and Lopez are sort of at the end of a continuum, you know, of cases that would not be upheld, but that when there's more economic, when something is tethered to something that's clearly economic, or it's not as speculative, I would say, as Lopez, then you're in a different place. Ms. Marsh, your red light is on, and we have a very lengthy warning. Okay. I think we should move on to Mr. Sohn, please. Okay. Thank you. Thank you. Thank you. May it please the Court. Jim Sonney for the plaintiffs. And just to re- I would like to ask you about the last point your adversary was making about whether the court essentially took away from the jury a fact question, and I'll do it by proposing a hypothetical. Supposing that you have a dual or multipurpose site. Maybe it functions as a resale shop of the sort that churches and schools and stuff like that often have, and that the habit at this place is at the opening of the day or at the close of the day, while the major activity that's performed is selling merchandise, there is a ceremony or a moment at the end at which worship is performed. At the end, there are two minutes of worshipful meditation, prayer, whatever. And the defendants in the case come and obstruct and do the things that the statute prohibits. Does it matter for the determination of whether it's at a place of worship? Does proportionality enter into the thing? I mean, if the place is one where acts of worship are performed, but they constitute a minute portion of what happens as opposed to a major portion. Does that enter into it at all? I understand your question. Or does the mere fact of some worship make it a place of worship so that it's covered? I understand the hypothetical, Your Honor. Just first, quickly, these places involved worship. All the three things that they were doing involved worship. So that's intercessory prayer. It is also the fast study, which is study of the scripture, which also invokes the presence of the gods. It is also proselytizing and proselytizing. Assuming all that is true, your adversaries are contending that among the activities performed there and among the activities are political propaganda about China, stuff that is not worship. Does it matter if both are true what the proportions are? Or does something like that matter? No, Your Honor. It doesn't matter. First, I would point you to the expert declaration, Ford's Declaration 1766-69, which talks about all of these examples, including what my colleague talks about in terms of proselytizing, or he calls propaganda, as a form of karma reduction. So I would, in terms of this particular instant dispute, in terms of what percentages in the abstract, churches, synagogues, other places of religious worship certainly have mixed uses. And there's no question that they are places of religious worship. If you analogize this to the ministerial – Churches and synagogues and places like that are places where even if they have some uses that are non-worship, it's a very heavy percentage of what goes on there and what the places are established for is worship. I understand that, Your Honor, and that's the same exact situation we have here. To the extent that there is – and so that's why I would point you to the expert declaration on that, in terms of what this is going on there. So it's exactly the same thing as we have as a synagogue and a church. I would also, to borrow from the Supreme Court's discussion of the ministerial exception in Hosanna-Tabor, Chief Justice Roberts talked about we don't use a stopwatch for these kinds of things, that courts should be very wary about judging how much – how many functions are religious, how many are secular, that we should be wary. And I would urge this court to take that into consideration in terms of constitutional avoidance as well. I'd like to ask you to focus on – if Judge LaValle has had his question answered adequately, I'd like to ask you to focus on the mobility of these tables. And you make an argument that they're proximate to a building and that they're permitted and so on. But I have difficulty drawing a limit on – where I live in New Haven, there are people on the borders of the green every day from the Church of Latter-day Saints, proselytizing, they are mobile, they move around, they may have a sign. And, you know, their conduct is religious in some respects, but I don't see them as necessarily protected by this statute, which is to protect or label to protect a facility or place of religious worship. And it seems to me that the people you represent are perhaps adequately protected by ordinary salt and battery laws and fit ill in this place, in this statute. Why should we construe these tables to be a place of worship? Your Honor, well, first of all, this case – the question before this court is the instant dispute. So what are the facts in this particular case, non-hypothetical case? And each of these sites – But I need you to help draw the limits on your position. Sure, certainly. Yes. And each of these sites has a designated address that is authorized by the police. Each of these sites is in close proximity to one another, as well as a spiritual center. What if they were two more blocks away? What if they're permitted? Well, let me ask – let me just put it this way. Their proximity to the bricks-and-mortar structure is only relevant to the extent that – the issue that my colleague raises in terms of the question of what is a place if it's a building or not. And he just essentially conceded in his argument that it wouldn't matter. But of course, we might have a different view. I understand. I understand, Your Honor. So – and I'm just giving that as one thing to consider in terms of their close proximity. They are extensions, field booths, and part of the center. But independently of that, they operate exclusively – exclusively, so only for this particular purpose – every day, 7 days a week, 10 to 4 p.m. for 8-plus years. These are not roving tables, just – or folks just walking around. They are fixed places. Doesn't that go to Judge LaValle's point, that this is really factual? To the extent that the jury might be asked whether or not worship is occurring, I suppose that if there was some sincerity question about that, then the jury might consider it. But the question – Your Honor, that's right. And I'm just framing it in terms of what the instant dispute is and why these places are places of religious worship. To the extent that – and the question before this Court is to clarify how does the FACE Act apply to the instant dispute. And so to the extent that there is guidance... Would I be protected if I – you know, every morning, 7 days a week, I stopped on the corner of the New Haven Green and had a worshipable moment, and someone assaulted me there? So am I protected by this statute? Is that because that's a place where I regularly worship? If it's a designated place for that particular purpose... It talks about locality, it talks about area, a spot... But we have to look at it in the context of this statute, which is called what the Freedom of Access to Clinical Facilities Act. Yes, Your Honor. Or something close to that, right? Yes, Your Honor. And it's really important. The statute says place of religious worship. It doesn't say facility. It doesn't say religious real property. It doesn't say house. That's why I'm asking whether we're really talking about conduct and why, if I stop every morning, I have a habit of stopping every morning and praying on the edge of the New Haven Green, whether that hasn't become a place of religious worship. And therefore, I'd be entitled to look to this statute to protect me against anyone who might assault me. What about your argument precludes that? I suppose it's theoretically possible. What we're looking about is designated places known to be places of religious worship that are targeted by the defendants. And that's a far cry from the hypothetical that Your Honor raises. And I would just urge the Court to — the question before the Court is the instant dispute. And it's very important that in drawing those lines, constitutional avoidance is very important in terms of place. If you read out other places, outdoor places, et cetera, you need to be very wary of that. So what would your analysis be? What analysis would you propose if the place was not one where a single person stopped every day or occasionally to worship or on this day to worship, but it was a place where regularly 20, 30, 100 people gathered on an open particular lawn and part of a park with no structure whatsoever, no tables, and they gathered there for worship purposes? Would that be a place of worship? If the religion designates it and uses it as a place of worship, then it should be protected. And this is very important. Historically, it's interesting that this case arises in Flushing. The Flushing Remonstrance was a rebellion against this persecution of what they called conventicles. Is there any — is there anything that — you just have been using the word designated. Is there anything in the statute that uses that word or says that an organized religion has to designate? The statute uses the word place. It does not use the word house. It does not use the word religious real property. It uses the word place. It doesn't use the word facility. And in fact, if you look at the statute, it has a carve-out for the very situation that Senator Kennedy was concerned about. If you look at the statute in Section A — excuse me, in Section D-2, nothing in this act shall create new remedies for essentially free exercise of religion occurring outside a facility. So that's outside a reproductive health facility. So by inference, it otherwise could cover gatherings and places of religious worship. If I may just real briefly, in terms of the Commerce Clause, just to summarize — Take one minute. One minute. Thank you, Your Honor. Just to reiterate our point, as the Supreme Court clarified in Raich, all Congress needs is a rational basis to conclude that a class of activities substantially affects interstate commerce. We know from Weslin and we know from Grassi that violence at places of religious worship qualifies. So we are essentially, as Judge Walker pointed out, we're talking about regulating access to these places of religious worship. The fact of a jurisdictional hook might make sense in context of where you have in 247. It might make sense where you have an open-ended in 1B. It talks about open-ended free exercise might make sense. And legislative findings are not necessary here where we have an obvious connection with interstate commerce. Thank you. Thank you very much. Okay, Mr. Feeney, you have three minutes rebuttal. Thank you, Your Honor. My colleague did go over it a little bit. I did have a couple of things I wanted to point out. I'm sorry. One important factor is Judge Weinstein relied on comparing the phrase religious property to place of religious worship. He compared Section 247, the use of the phrase religious property, and then he compared that to 248 and said that that 248 uses place of religious worship. But in 247 sub F, 247 sub F says, including fixtures or religious objects contained within a place of religious worship. So interestingly, Section 247's definition of religious property makes reference to within a place of religious worship. And the phrase place of religious worship, as defined in Section 247, contrary to Judge Weinstein, actually confirms the defendant's view that the more common sense reading of place of religious worship doesn't mean just anything anywhere, but a place of religious worship, as people commonly understand that to mean. You mean bricks and mortar? Not necessarily, but the legislative history, there's at least ambiguity enough that if you look at the legislative history for 248 and it says examples of conduct that would be prohibited and would give rise to a civil cause of action under this Act would be physically blocking access to a church or pouring glue. Where are you reading from? A2097, which is the legislative history of 248. It says, like 247, it covers only conduct occurring on, at, or in the immediate vicinity of a place of religious worship, such as a church, synagogue, or other structure or place used primarily for worship. Jury issue. In my case, there were 13 plaintiffs. The first few plaintiffs I deposed when I came back to the office, my partner congratulated me because I got the plaintiffs to admit the truth. When you're practicing Appendix A777, one of the plaintiffs in the early depositions before they were coached, when you're practicing, actually practicing Falun Gong, isn't it the movements and the meditation? Answer, yes. But you're not doing that at the five tables. At the five tables you're handing out materials, you do the movements and the meditation in the spiritual center in the parks. You're not doing that at the table, right? Ms. Marsh, objection. Answer, at the table we pass out flyers. We try to tell the truth of how the Chinese Communist Party persecute the Falun Gong practitioner. We try to tell the truth about how the Communist Party harvests organs. My question, right, but you don't do the meditation or the exercises at the five tables, correct? No, we don't do the meditation. A jury gets a chance, and there's more in our brief, in our reply brief, where I quote on page 26, no, no, it's mainly for the, no, no, it's not mainly for worship. No, mostly they're for distribution of our flyers. That's page 24, on my reply brief. We have tables and that's where we also have propaganda material. They go on for months and years criticizing the Chinese government and saying to Chinese Americans on Main Street that you're of a lower moral quality because you're brainwashed by the Chinese government, you need to convert. They're very insistent, they're very argumentative, and it causes fights on the street, scuffles. No one gets seriously hurt, but they cause it. They get the permits to do that. It's not a place of religious worship, and I should have the ability to put that evidence on and show how Ms. Marsh then took the later depositions and had those plaintiffs say, well, I'm internally meditating, which a group of anti-abortion protesters on the street could say they're meditating, but if they're shouting at women on the street about abortion and someone heckles back at them, that's not a place of religious worship, that's a political rally, and I get a right to put that to the jury. Thank you, I think we have the arguments, we have your briefs and papers.